UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-CV-11025-RGS

UNITED STATES

v.

YOUNG KWON SON

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

April 13, 2010

STEARNS, D. J.

In this action under section 340(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1451(a), the United States seeks to revoke and set aside the October 15, 2001 grant of United States citizenship to Young Kwon Son, and to cancel his Certificate of Naturalization. On October 6, 2009, the United States filed a motion for summary judgment. The court heard oral argument on April 12, 2010.

BACKGROUND

Son was born in Seoul, South Korea in 1972. He was granted lawful permanent resident (LPR) status in the United States on May 28, 1993. According to Son's green card, his LPR status was based on an E28 visa classification. The E28 visa classification is reserved for the children of a "Professional Holding an Advanced Degree or of Exceptional Ability."

On October 17, 2000, Son filed an Application for Naturalization with the Boston District of the former Immigration and Naturalization Service (INS), stating that he had been admitted to the United States as an LPR for at least five years. After an interview on

September 4, 2001, Son was issued a Certificate of Naturalization on October 15, 2001. He took the oath of citizenship that same day.

Son's father, Kihyun Son (Kihyun), received LPR status on February 11, 1993. Kihyun's green card indicates that his LPR status was based on an E18 visa classification. The E18 visa classification designates a "Priority Worker – Certain Multinational Executive or Manager" (Priority Worker). Son's mother (Kihyun's wife), Kyungai Son (Kyungai), was granted LPR status on March 23, 1994. Her green card indicates that LPR status was granted based on her E19 visa classification as the spouse of a Priority Worker.

On May 2, 2003, the Department of Homeland Security began removal proceedings against Kihyun and Kyungai, alleging that they did not possess valid visas at the time of their entry and adjustment of status. On July 14, 2005, an Immigration Judge in San Francisco sustained the charges of removal against both Kihyun and Kyungai, finding that

> [w]hat the documents have shown is that these [green] cards were issued illegally by [a former official of the INS,] Mr. [Leland Sustaire]. And as I think you know, he was taking bribes and illegally issuing these green cards.

Leland Sustaire is a former official of the INS who, while working as a Supervisory Examinations Officer in San Jose, California, entered into a conspiracy with certain Korean nationals to unlawfully sell green cards. He was eventually convicted under the federal conspiracy statute, 18 U.S.C. § 371. At his deposition, Kihyun testified that a Korean intermediary obtained green card applications from Sustaire for himself, Kyungai, and Son. Kihyun acknowledged that he never attempted to lawfully obtain the green cards himself. He testified that he paid Sustaire "probably . . . $20,000," or "less than $20,000" for the false documents.

While Sustaire was under investigation in 1994 and 1995, he created a list of the A-

files that he had fabricated.[1]  Son's name and his alien number are on the list next to the date May 28, 1993 (the day Son received LPR status).  Kihyun's initials, birth date, and alien number also appear on the list.  The INS determined that only five of the persons on Sustaire's list had lawfully received their green cards.  Neither Son nor his parents were among that group.  The "card production document," which generated Son's green card, bears Sustaire's name and signature.

## DISCUSSION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986).  Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment . . . upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).[2]

---

[1]An A-file contains all of the information and documents that an applicant submits to the INS.  After creating the list, Sustaire burned all of the illegal A-files he kept at his residence.

[2]"[A]lthough the government bears a heavy burden in denaturalization proceedings, the facts of a case may be such that revocation of citizenship at the summary judgment stage may be appropriate."  United States v. Dailide, 227 F.3d 385, 389 (6th Cir. 2000). The rules of summary judgment are no different when applied in a denaturalization

A court may revoke and set aside an Order granting a person United States citizenship and cancel a Certificate of Naturalization if: (1) the Order and Certificate were "illegally procured;" or (2) the person obtained naturalization by "concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). The law requires "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship. Failure to comply with any of these conditions renders the certificate of citizenship illegally procured, and naturalization that is unlawfully procured can be set aside." Fedorenko v. United States, 449 U.S. 490, 506 (1981) (quotation marks and citations omitted). The Supreme Court has, however, cautioned that

> [i]n its consequences [denaturalization] is more serious than a taking of one's property, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men. This does not mean that once granted to an alien, citizenship cannot be revoked or cancelled on legal grounds under appropriate proof. But such a right once conferred should not be taken away without the clearest sort of justification and proof.

Schneiderman v. United States, 320 U.S. 118, 122 (1943). The court finds that the government in this case has offered the clearest of proof of immigration fraud on Son's part.

To be eligible for naturalization, an applicant not married to a United States citizen must have achieved LPR status for at least five years and must establish that he had been lawfully admitted to the United States. See 8 U.S.C. §§ 1427, 1429. Son became an LPR based on his relationship to his father, Kihyun. However, because Kihyun had paid an

---

proceeding than in any other civil case. See United States v. Koreh, 59 F.3d 431, 433 n.1 (3d Cir. 1995).

illegal bribe to obtain LPR status, he was an unlawful resident of the United States, and as Son's status was dependent on Kihyun's status, he too was unlawfully classified as a permanent resident.

Son argues that the government has failed to prove conclusively that he had obtained his LPR status through his father.  Son points to the discrepancies between his visa classification and that of his father – while Son's green card indicates that his status is based on an E28 classification (child of a "Professional Holding an Advanced Degree or of Exceptional Ability"), Kihyun's classification was listed as E18 (Priority Worker).  Son seizes on Sustaire's testimony that his practice in the cases in which he forged permanent resident cards for members of the same family was to classify the children in the E1 category.  On the other hand, Sustaire testified that a child classified under the E2 category (as was Son, who was designated E28), did not legally derive his status through his parent(s).[3]

While Son vigorously contends that this alleged discrepancy creates a genuine issue of a material fact, the court finds it irrelevant.  As the government notes, the only way that Son could have legitimately obtained his E28 status is if one of his parents had lawfully obtained LPR status as a "Professional Holding an Advance Degree or of Exceptional Ability."  Son does not contest that his parents are Kihyun and Kyungai, nor does he argue that either parent qualified under the latter category.[4]

---

[3] Son argues that if he had derived LPR status from his father, the correct visa category would have been E15.

[4] Kihyun was the sole owner of a small interior design/architecture business with offices only in Korea.  He has also been self-employed as a contractor and as a building inspector in the United States.  Kyungai owned a deli in San Jose.

Next, Son argues that he is at a disadvantage because his A-file cannot be located (presumably if one ever existed, it was burned by Sustaire). Son correctly points out that evidence of all filings by non-citizen applicants to the INS are contained in the individual's A-file. Because his file cannot be located, Son argues that he has no legal way to defend himself in this case, nor can he show any filings that he might have made with the government prior to the filing of his application for citizenship. Son, however, concedes that he "has no documents evidencing filings made with the government." Opp'n at 7. Moreover, when Son was asked during discovery whether he had ever attended an interview before receiving his green card, whether he was fingerprinted by the INS, or whether he had undergone the requisite medical examination, he declined to answer, invoking his Fifth Amendment privilege against self-incrimination.[5] He also declined to answer when asked whether he was aware that his green card was obtained unlawfully.

Son's argument ultimately is one not cobbled up from facts, but from conjecture and speculation, and based on the erroneous assumption that on summary judgment the government in a denaturalization proceeding is required to disprove every negative hypothesis beyond a reasonable doubt (or as his counsel stated at oral argument, "nearly so"). Son has not shown that he would have access to any pertinent information in the A-file, even were it to be located.[6]

---

[5] In a civil proceeding – which this is – an adverse inference may properly be drawn from a party's invocation of the privilege against self-incrimination. Mitchell v. United States, 526 U.S. 314, 328 (1999); Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996).

[6] Finally, Son argues that there is evidence suggesting that the INS knew about the facts alleged in the Complaint prior to approving Son for naturalization. Therefore, Son argues, it is plausible that the government considered all of the information and decided to naturalize him anyway. Son argues that the former INS must be held accountable for

6

ORDER

Because there are no material facts in dispute, the motion for summary judgment is <u>ALLOWED</u>. The United States shall submit a proposed Order and form of judgment within ten days.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

having knowledge and evidence of the facts alleged in the Complaint, and nonetheless naturalizing him. On January 26, 2009, the court issued an Electronic Order allowing the government's motion to strike Son's affirmative defenses of estoppel and laches. <u>See Office of Personnel Mgmt. v. Richmond</u>, 496 U.S. 414, 419 (1990).